**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| Kristin A. Ennis, | : Civil Action No.: 3:13-cv-00301 |
| Plaintiff, | : |
| v. | : |
| | : COMPLAINT |
| County Line Carriage, Inc., d/b/a Auto Jocks, | : |
| | : |
| Defendant. | : March 5, 2013 |

For this Complaint, Plaintiff, Kristin A. Ennis, by undersigned counsel, states as, follows:

## PRELIMINARY STATEMENT

1.      This is an action for statutory, actual, and punitive damages and for declaratory and injunctive relief brought pursuant to the federal Truth in Lending Act, 15 U.S.C. § 1601 et seq., Regulation Z, 12 C.F.R. §226.1, et seq. ("TILA"), Connecticut Unfair and Deceptive Practices Act, Conn. Gen. Stat. § 42-110b ("CUTPA"), Good Faith and Fair Dealing Obligation under UCC § 1-203, breach of contract, and common law fraud.

## JURISDICTION AND VENUE

2.      This action arises under the Federal Truth in Lending Act, 15 U.S.C. §1601, et seq., with supplemental jurisdiction over the state law claims.  As to the state law claims, this Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367, and jurisdiction under 28 U.S.C. §1332(d).

3.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), in that the Defendant transacts business in this District and a substantial portion of the acts giving rise to this action occurred in this District.

## PARTIES

4.      The Plaintiff, Kristin A. Ennis ("Plaintiff," and/or "Kristin"), is an adult individual residing in Naugatuck, Connecticut.

5.      Defendant, County Line Carriage, Inc. d/b/a Auto Jocks (hereinafter, the "Dealership" or "Defendant"), is a Connecticut business entity with an address of 2160 Straits Turnpike, Middlebury, Connecticut 06762, and is engaged in the business of selling motor vehicles within the jurisdiction of this Court.

## STATEMENT OF FACTS

A.  Vehicle Purchase

6.      On or about February 13, 2013, Kristin visited the Dealership and agreed to purchase a 2010 Honda CRV, Vehicle Identification Number 5J6RE4H37AL081619 (the "Vehicle"), located on its lot.

7.      Kristin agreed to a purchase price of $23,500.00, with a total cash price of $26,757.70, but advised the Dealership that she could afford to make only about $7,000.00 downpayment towards the purchase price of the Vehicle and inquired whether she could finance the remainder of the purchase price.

8.      The Dealership requested and Kristin provided her background and employment information, and same day the Dealership informed Kristin that financing had been arranged.

2

9. The Dealership then presented and Kristin signed the Vehicle purchase documents, including the Retail Installment Sales Contract, following which Kristin took delivery of the Vehicle and left the Dealership.

10. County Line Carriage, Inc., is identified in the RISC as the "Creditor-Seller" of the Vehicle.

11. Kristin is identified in the RISC as the "Buyer" of the Vehicle.

12. Further, the RISC reflected that the Vehicle's purchase price was funded with a downpayment of $7,100.00, followed by 72 monthly payments of $517,30, with the a first payment due on March 30, 2013.

13. In addition, the RISC contains the following terms:

> You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Creditor - Seller (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.
>
> HOW THIS CONTRACT CAN BE CHANGED. This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding. Buyer Signs X _____, Co-Buyer Signs _____.
> If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we

3

> may extend the time for making some payments
> without extending the lime for making others.
> See back for other important agreements.
>
> 3.d. <u>We may take the vehicle from you</u>. If you
> default, we may take (repossess) the vehicle
> from you if we do so peacefully and the law
> allows it. If we take the vehicle, any accessories,
> equipment, and replacement parts will stay with
> the vehicle. If any personal items are in the
> vehicle, we may store them for you at your
> expense. If you do not ask for these items back,
> we may dispose of them as the law allows.

**B.  <u>Contract Breach and Wrongful Repossession by the Dealership</u>**

14.    On or about February 27, 2013, and 4 weeks before the first payment

was due, the Dealership informed Kristin that her financing application had not in

fact been finalized and requested additional documentation.

15.    Kristin responded that she was unable to obtain the document the

Dealership requested and further added that per terms of RISC she was willing

and able to make monthly payments to the Dealership.

16.    The Dealership refused to accept payments, stating that it was not a

"bank," and that Kristin had to surrender the Vehicle and all the paperwork she

got from the Dealership when she purchased it.

17.    The Dealership further insinuated that if Kristin would not comply, the

Dealership would have to go down the road which it did not want to take, i.e.

repossessing the Vehicle.

18.     Under protest, and to avoid stress associated with Vehicle repossession, Kristin surrounded the Vehicle and all the documents to the Dealership on or about March 1, 2013.

## COUNT I

## VIOLATION OF TILA – 15 U.S.C. § 1601 *et seq.*

19.     The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

20.     At all times relevant hereto, the Defendant regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments.  Defendant is a person to whom the transaction which is the subject of this action is initially payable, making Defendant creditor within the meaning of TILA, 15 U.S.C. § 1602(f) and Regulation Z § 226.2(a)(17).

21.     15 U.S.C. § 1638 provides that the creditor shall disclose the "amount financed," the "finance charge," the "annual percentage rate," as well as other items so that the consumer can make an informed decision regarding the credit being offered.

22.     15 U.S.C. § 1638 also governs the timing of these disclosures and prohibits any conduct that would prevent the consumer from having a meaningful opportunity to review the terms of the credit being offered.

23.     The Defendant in fact had not arranged Vehicle financing at the time the purchase was consummated, and the disclosures contained in the Retail

Installment Sales Contract signed by the Plaintiff are false, and therefore violate the TILA and Regulation Z.

24.    The RISC and these consumer protection statutes are to be construed liberally in favor of consumers and strictly against the seller.

25.    The appearance of the extension of credit in unambiguous terms on one hand, combined with actual absence of agreement to provide Vehicle financing violates TILA.

26.    Upon information and belief, this is a common practice of the Defendant and such a practice manifests a gross and willful contempt for the law.

27.    As a result of these violations of TILA, the Defendant is liable to the Plaintiff for actual damages; statutory damages equal to twice the finance charge; punitive damages; costs and attorney fees.

**COUNT II**

**BREACH OF CONN. GEN. STAT. 42-110b – UNFAIR AND DECEPTIVE PRACTICES**

28.    The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

29.    The Defendant is in the business of selling motor vehicles and therefore is bound by Conn. Gen. Stat. 42-110b(a), Connecticut Unfair Trade Practices Act ("CUTPA"), which prohibits engaging in unfair or deceptive acts in the conduct of any commerce or trade.

30.    The Defendant has engaged in unfair acts and practices in trade or commerce in violation of CUTPA through misrepresenting the contractual terms and conditions incident to Plaintiff's purchase of the Vehicle, and unilaterally

breaching the contract by constructively reposing Plaintiff's Vehicle before the first payment was due.

31.     As a result of said violation the Plaintiff has incurred ascertainable damages.


## COUNT III

## BREACH OF GOOD FAITH AND FAIR DEALING OBLIGATION PURSUANT TO UNIFORM COMMERCIAL CODE § 1-203

32.     The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

33.     By misrepresenting material facts and omitting material facts, the Defendant did not perform its obligations to the Plaintiff in good faith and therefore violated UCC §1-203.

34.     The actions of the Defendant as described in this Complaint constitute a breach of the good faith requirement and as a proximate result the Plaintiff has sustained the damages set forth herein.


## COUNT IV

## BREACH OF CONTRACT

35.     The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

36.     The Defendant, by constructively repossessing the Vehicle where Plaintiff had not defaulted on her payment obligations under RISC, breached the Contract.

7

37.     The Defendant, by reason of knowingly misrepresenting the terms of agreement and by knowingly misrepresenting that it secured Vehicle financing, breached the Contract.

38.     As a result Plaintiff sustained damages.

## COUNT V

## FRAUD OR MISREPRESENTATION

39.     The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

40.     The Defendant induced the Plaintiff to purchase the Vehicle by the misrepresentation of material facts and omission of material facts, namely by misrepresenting that the Defendant secured financing or would itself finance the remainder of the Vehicle's purchase price.

41.     The Defendant knew such representations to be false, or it made those representations recklessly, or the Defendant had no reasonable grounds for believing those representations were true.  The Defendant also knew that its omissions were material and important.

42.     The Defendant intended to deceive the Plaintiff and intended that the Plaintiff would rely upon its representations, which the Plaintiff did, to the Plaintiff's detriment, suffering damages as a result.

43.     The Plaintiff is entitled to monetary and punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays that judgment be entered against the Defendants:

8

(a)  Money damages in the form of a refund of the full contract price, including, a refund of all payments made by Plaintiff on the subject contract;

(b)  Statutory damages of twice the finance charge, with a minimum of $100.00 and a maximum of $1,000.00;

(c)  Incidental damages and consequential damages;

(d)  Treble damages;

(e)  Reasonable attorneys' fees; and

(f)  Such other and further relief as this Court deems just and proper.

TRIAL BY JURY DEMANDED ON ALL COUNTS

Dated: March 5, 2013

Respectfully submitted,

By   /s/ Sergei Lemberg

Sergei Lemberg, Esq.
LEMBERG & ASSOCIATES L.L.C.
1100 Summer Street, 3rd Floor
Stamford, CT 06905
Telephone: (203) 653-2250
Facsimile:   (203) 653-3424
Attorney for Plaintiff